**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
─────────────────────────────────────────────────────────

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL**
**WORKERS LOCAL UNION NO. 1249 PENSION and**
**INSURANCE FUNDS, by Daniel R. Dafoe, as Administrator;**
**NATIONAL ELECTRICAL BENEFIT FUND,**
**by D.R. Borden, Jr. and Jon F. Walters as Trustees;**
**NEW YORK STATE LINEMAN'S SAFETY TRAINING**
**FUND, by Richard French, as Safety Director; NORTHEASTERN**
**JOINT APPRENTICE AND TRAINING FUNDS,**
**by James Atkins, as Apprentice Director; and I.B.E.W. LOCAL**
**UNION NO. 1249, by William Boire, as Business Manager,**

                                      **Plaintiffs,**                **5:07-CV-146**
                                                                              **(NAM/GHL)**

**v.**

**PHOENIX SIGNAL AND ELECTRIC CORP.,**
**and Robert Craig, Individually and as an Officer of**
**PHOENIX SIGNAL AND ELECTRIC CORP.**

                                      **Defendants.**
─────────────────────────────────────────────────────────

**APPEARANCES:**                                **OF COUNSEL:**

Blitman & King LLP                            Jennifer A. Clark, Esq.
Franklin Center
443 North Franklin Street
Suite 300
Syracuse, NY 13204-1415
Attorney for Plaintiff

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

                              **MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

      Plaintiffs International Brotherhood of Electrical Workers Local Union No. 1249 Pension

and Insurance Funds, by Daniel R. Dafoe, as Administrator, National Electrical Benefit Fund, by

D.R. Borden, Jr. and Jon F. Walters as Trustees, New York State Lineman's Safety Training

Fund, by Richard French, as Safety Director; Northeastern Joint Apprentice and Training Funds, by James Atkins, as Apprentice Director; and I.B.E.W. Local Union No. 1249, by William Boire, as Business Manager, filed a complaint alleging that defendants Phoenix Signal and Electric Corp., and Robert Craig, individually and as an officer of Phoenix Signal and Electric Corp., failed to remit fringe benefit contributions and deductions to plaintiffs as required by the rules and regulations of the Funds' Board of Trustees and the terms and conditions of the plaintiffs' Agreements and Declarations of Trust and the Collections Policy to which the parties are bound. Consequently, plaintiffs allege, the Employee Retirement Income Security Action of 1974 ("ERISA"), 29 U.S.C. §§ 1145 and 1132(g)(2), and the Agreements and Declarations of Trust and Collections Policy obligate defendants to remit the delinquent contributions and deductions, to pay interest, the greater of interest or liquidated damages, costs and fees of collection and attorney's fees. Defendants have not answered the complaint or otherwise appeared in connection with this action. For this reason, plaintiffs move pursuant to Rule 55(b) of the Federal Rules of Civil Procedure for entry of default judgment in their favor and an award of $75,293.25 in fringe benefit contributions and deductions, $14,504.33 in interest, $14,435 in liquidated damages, and $4,239.98 in attorney's fees and costs, including paralegal fees.

**II.    FACTS**

The Court has taken the following facts from plaintiffs' pleadings and submissions: Defendant Phoenix Signal and Electric Corp., ("Phoenix Signal") is party to a collective bargaining agreement with Northeastern Line Constructors Chapter of NECA and International Brotherhood of Electrical Workers Local Union No. 1249 ("the Agreement"). Pursuant to the provisions of the Agreement, Phoenix Signal is obligated to remit fringe benefit contributions and

2

deductions to plaintiffs for all hours worked by employees who are covered by the collective bargaining agreement, i.e., performing bargaining unit work. Defendant Robert Craig, president of Phoenix Signal, owned, controlled and dominated the affairs of Phoenix Signal and determined when, and if, to remit fringe benefit contributions and deductions to plaintiffs.

As referenced above, according to the complaint, defendants failed to remit fringe benefit contributions and deductions to plaintiffs from May 2006 through August 2006. Therefore, plaintiffs assert, under the terms of the Agreements and Declarations of Trust, Collections Policy, and ERISA, defendants are responsible for the delinquent fringe benefit contributions and deductions as well as interest, liquidated damages, costs and fees of collection, and attorney's fees.

Presently before the Court is plaintiffs' motion for default judgment. Based on defendants' failure to remit benefit contributions and deductions to plaintiffs from May 2006 to August 2006, plaintiffs contend that they are entitled to judgment as follows: $75,293.25 in fringe benefit contributions and deductions, $14,504.33 in interest, $14,435 in liquidated damages, and $4,239.98 in attorneys' fees and costs, including paralegal fees. Thus, plaintiffs seek judgment in the total amount of $108,473.50.

## III.   DISCUSSION

### A.   Standard – Default Judgment Rule 55(b)

Under Rule 55(b) of the Federal Rules of Civil Procedure, default judgment shall be entered if a defendant has failed to plead or otherwise defend an action." *Parise v. Riccelli Haulers, Inc.*, 672 F.Supp. 72, 74 (N.D.N.Y. 1987). Rule 55(b)(2) and Local Rule 55.2 set forth the procedural prerequisites plaintiffs must meet before their motion for default judgment may be

3

granted. Plaintiffs must: (1) properly serve defendant with a summons and complaint (to which no response has been made); (2) obtain an entry of default; and (3) provide an affidavit setting forth the facts required by L.R. 55.2(a), including an affidavit showing that defendant is not an infant or incompetent, or in the military service. *See* Fed. R. Civ. P. 55(b)(2); N.Y.N.D.L.R. 55.1 and 55.2.

Rule 54(b) provides, in pertinent part, that "[w]hen more than one claim for relief is presented in an action . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties . . .upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." *See Advanced Magnetics v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir. 1997). There is "no just reason for delay" "where a plaintiff might be prejudiced by a delay in recovering a monetary award." *Id.* (citing *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 11-12 (1980).

As referenced above, plaintiffs filed and served a summons and complaint. Defendants have not answered the complaint. Plaintiffs timely served defendants written notice of the application for judgment pursuant to Fed. R. Civ. P. 55(b)(2). Defendants never answered or otherwise moved with respect to the complaint. Plaintiffs received a clerk's entry of default on March 29, 2007. On July 20, 2007, plaintiffs filed a motion for default judgment and submitted the required affidavits pursuant to Rule 55(b)(2). Pursuant to Rule 54(b), plaintiffs have shown that there is "no just reason for delay," since the corpus and income of plaintiffs' funds have been reduced. Further, plaintiffs have submitted an affidavit by their counsel showing that defendants are not infants or incompetent, and are not in the military service. Therefore, plaintiffs have

4

fulfilled the procedural prerequisites for default judgment. Accordingly, the Court will address liability.

### B.     Liability

"A party's default is deemed to constitute a concession of all well-pleaded allegations of liability." *Resolution Trust Corp. v. Forney*, 1993 WL 61415, *1 (W.D.N.Y. June 28, 1993) (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty*, 973 F.2d 155, 158 (2d Cir. 1992)). The allegations in plaintiffs' complaint and supporting documents, as summarized below, are therefore presumed accurate.

Pursuant to 29 U.S.C. § 1145, "[e]very employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Further, where the contract between the parties classifies unpaid contributions as trust assets, the controlling officer of the company is a fiduciary individually liable for a delinquency if he withholds contributions from the plans. *NYSA-ILA Med. and Clinical Servs. Fund v. Catucci*, 60 F.Supp.2d 194 (S.D.N.Y. 1999); *LoPresti v. Terwilliger*, 1216 F.3d 34, 40 (2d Cir. 1997) (finding that individual who commingled plan assets with general assets, and used plan assets to pay company creditors, rather than forwarding the assets to the plaintiff funds meant that he "exercise[d] . . . authority or control respecting . . . disposition of [plan] assets, and hence is a fiduciary for purposes of imposing personal liability under ERISA.").

Here, according to the complaint, defendants employed individuals covered by the Agreement. Under the Agreement, defendants were required to pay contributions and deductions

5

on behalf of covered employees. Plaintiffs assert that defendants failed to make timely the required contributions and deductions from May 2006 to August 2006. Therefore, defendants' conduct, as alleged, stands in violation of ERISA.

### C.  Damages

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). The Court "must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id*. Where a violation of 29 U.S.C. § 1145 has occurred, ERISA authorizes plaintiffs to enforce an employer's obligations to remit contributions in accordance with the terms of the Agreement, Trusts, and Collections Policy, and collect delinquent contributions and deductions, interest, liquidated damages, and audit fees. *See* 29 U.S.C. § 1132(g)(2)(A-D).

In support of their motion for default judgment, plaintiffs have submitted affidavits and documentary evidence in admissible form to demonstrate the amount of damages to which plaintiffs contend they are entitled. In view of the documentary evidence, a hearing to ascertain the damages in this case is unnecessary. Michael Reed avers that as Controller and Assistant Administrator of the National Electrical Benefit Fund ("NEBF"), he is "fully familiar with the operation and administration of the NEBF, the monies owed to the NEBF, and am fully familiar with all the facts and circumstances herein." Reed Aff. ¶ 1. Reed states that "[d]efendants failed to remit $5,498.08 in contributions to the NEBF for the months of May 2006 through August 2006." *Id*. ¶ 8

William Boire asserts that as Business Manager of the Union, he is "fully familiar with the

6

operation and administration of the Union and its books and records." Boire Aff. ¶ 1. Boire further asserts that as a Trustee of the Pension and Insurance Funds, he is "fully familiar with the operation and administration of the Pension and Insurance Funds." *Id*. ¶ 2. Boire is also a Trustee of the Training Fund, and, as such, is "fully familiar" with its operation and administration. *Id*. ¶ 3. Boire avers that defendants "failed to remit $5,498.08 in contributions to the Training Fund for the period May 2008 through August 2006" and "$5,782.18 in deductions to the Union . . . for the period May 2006 through August 2006." *Id*. ¶¶ 12-13.

Daniel Dafoe, as administrator of the International Brotherhood of Electrical Workers Local Union No. 1249 Pension and Insurance Funds, is "responsible for . . . administering the collection policies and procedures of the Pension and Insurance Funds and collecting fringe benefit contributions due and owing by contributing employers". Dafoe Aff. ¶ 1. Dafoe states that defendants "owe $54,344.00 in fringe benefit contributions to Plaintiff Pension and Insurance Funds for work performed under the collective bargaining agreement during the months of May 2006 through August 2006." *Id*. ¶ 11. Dafoe further states that defendants "owe $2338.22 in fringe benefit contributions to Plaintiffs National Labor Management Cooperation Committee . . . and the National Electrical Industry Fund for work performed under the collective bargaining agreement during the months of May 2006 through August 2006." *Id*. ¶ 12.

John Baker, an apprentice director of the Northeastern Joint Apprenticeship and Training Funds ("NEAT"), is responsible for "the collection policies and procedures of the NEAT and collecting fringe benefit contributions due and owing by employers to the Neat." Baker Aff. ¶1. Baker avers that defendants failed to remit $1,832.69 in contributions to NEAT for the months of May 2006 through August 2006. *Id*. ¶ 9.

7

Based on the evidence outlined above, defendants owe plaintiffs $75,293.25 in contributions and deductions. Where a violation of 29 U.S.C. § 1145 has occurred, ERISA authorizes plaintiffs to enforce an employer's obligations to remit contributions in accordance with the terms Agreement and Declaration of Trust, to wit, delinquent contributions, interest, liquidated damages, and attorney's fees and costs. *See* 29 U.S.C. § 1132(g)(2)(A-D). According to plaintiffs' submissions, calculated in accordance with the terms of the collective bargaining agreement, Agreement and Declarations of Trust, and ERISA, based on the amount of defendants' delinquency, plaintiffs are entitled to $14,504.33 in interest through July 15, 2007, and $14,435.94 in liquidated damages.

### E.   Attorneys' Fees

Pursuant to the Agreement, Agreement and Declarations of Trust, Collections Policy, and 29 U.S.C. § 1132(g)(2), plaintiffs are also entitled to recover attorney's fees and costs associated with their efforts to collect the delinquent contributions and deductions. Here, plaintiffs request attorney's fees and costs in the amount of $4,239.98. This sum represents $3,543.50 in attorney's and paralegals' fees, and $696.48 in costs and disbursements.

According to Jennifer A. Clark, plaintiffs' attorney, plaintiffs are entitled to an award of $3,543.50 in fees based on her work and the work of two paralegals. A Narrative of Services attached to Clark's affidavit indicates that Clark spent a total of 12.65 hours working on this case at the hourly rates of $216.00 per hour in 2006 and $225.00 per hour in 2007, and two paralegals performed a total of 6.05 hours working on this case at the rate of $118.00 per hour in 2006 and $123.00 per hour in 2007. Clark, who has been admitted to the bar since 1982, is a experienced attorney.

8

Having considered this matter, and all submissions in this case, the Court finds that the rates set forth in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 419 F.Supp.2d 206, 211 (N.D.N.Y. 2005): $210 per hour for experienced attorneys; $150 per hour for associates with more than four years experience; and $80 per hour for paralegals, are the rates "a reasonable, paying client would pay", *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 121 (2d Cir. 2007), in the Northern District of New York "community". *Id*. at 118. Thus, they are "presumptively reasonable" in this case. Further, the Court finds the hours spent by the attorney and paralegals working on this case were reasonable. The Court therefore will award $3,140.50 in attorney and paralegals' fees. This sum represents $2,656.50 in attorney's fees (12.65 hours at the rate of $210 per hour) and $484 in paralegals' fees (6.05 hours at the rate of $80 per hour).

Plaintiffs also seek reimbursement for costs and disbursements in the amount of $696.48. ERISA authorizes the award of costs of an action in conjunction with attorneys' fees. *See* 29 U.S.C. § 1132(g)(2)(D). Further, the Agreement, Agreement and Declarations of Trust, and Collections Policy provide that an employer delinquent in payments must reimburse plaintiffs for costs and disbursements. The Court finds these costs reasonable and includes them in the final damages award.

**IV.   CONCLUSION**

Plaintiffs have met the procedural and substantive requirements to obtain a judgment of default pursuant to Fed. R. Civ. P. 55(b)(2) and have submitted evidence in admissible form which establishes a sum representing appropriate damages.

Accordingly, it is

9

**ORDERED** that plaintiffs' motion for default judgment is **GRANTED** and it is further;

**ORDERED** that defendants are liable to plaintiffs for $108,070.50.  This sum represents: (1) $75,293.25 in unpaid contributions and deductions; (2) $14,504.33 in interest; (3) $14,435.94 in liquidated damages; (4) $3,140.50 in attorney and paralegals' fees; and (5) $696.48 in costs and disbursements.

It is so **ORDERED.**

Date:  January 4, 2008

_____
Norman A. Mordue
Chief United States District Court Judge